# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF LOUISIANA
# SHREVEPORT DIVISION

DELBERT LAFITTE ESTESS, ET AL.          CIVIL ACTION NO. 12-0052

VERSUS                                   JUDGE S. MAURICE HICKS, JR.

PLACID OIL COMPANY                       MAGISTRATE JUDGE HORNSBY

## MEMORANDUM RULING

Before the Court is Placid Oil Company's ("Placid") Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6). (Record Document 13). After consideration of Delbert Estess, Barbara Estess, Joann Ziller, LLC and Gary Estess, LLC's ("plaintiffs") opposition (Record Document 15), plaintiffs' Sur-Reply Memorandum (Record Document 20) and Placid's Reply to Sur-Reply (Record Document 21-1),[1] Placid's Motion is **DENIED**.

## BACKGROUND

Plaintiffs brought suit against Placid Oil Company regarding an Oil, Gas, and Mineral Lease dated August 4, 1972. (Record Document 1-2 at 1). Specifically, plaintiffs allege that Placid failed to develop the property as a reasonably prudent administrator, failed to seek a revision of the true drainage area for the unit well, and failed to pay royalties due to plaintiffs. (Record Document 13 at 5).

Placid has brought this motion to dismiss alleging that "all claims are premature." (Record Document 13 at 2). Placid alleges that under the Louisiana Mineral Code, all of the claims plaintiffs make in their complaint require written notice and a reasonable time to respond and the plaintiffs failed to give such notice. See id. Plaintiffs respond that they

---

[1] Therefore, Placid's Motion for Leave to File Reply to Sur-Reply with consent (Record Document 21) is granted.

properly notified the managing counsel of Placid even though they technically notified him under the title of managing counsel for Oxy USA, Inc. ("Oxy"), a separate subsidiary of Occidental Petroleum Corporation. The eventual parent company of both Placid and Oxy is Occidental Petroleum Corporation.[2] Plaintiffs' further argue that in response to plaintiffs' demands and under the letterhead of Oxy, Brenton B. Moore ("Moore"), as managing counsel, held himself out as the representative for both Oxy and Placid. (Record Document 15).

Plaintiffs allege that they sent four letters giving Placid notice of their claims. Plaintiffs concede that three of those letters, sent by certified mail, were returned to plaintiffs due to errors in the addresses. However, the fourth letter, sent to Oxy, was received and responded to by Moore, Managing Counsel of Oxy and Placid.

On May 10, 2011, plaintiffs' counsel wrote to Oxy, giving Oxy notice of their demands regarding drainage and failure to develop the property. Moore responded to plaintiff's initial demand as follows:

> Reference is made to your letter dated May 10, 2011, to OXY USA Inc. concerning the captioned oil and gas lease. As you may know, the stock of Placid Oil Company was acquired by Occidental in the 1990's.
> We are in the process of searching for Placid Oil Company's files on this lease in order that we can determine the status of its ownership as well as investigate the allegations contained with your demand in order that we can properly respond.
> In the interim, should you need to further communicate on this matter, please direct all correspondence to my attention.

---

[2] Oxy is a subsidiary of Occidental Petroleum Corporation. (Record Document 1-2 at 18). Placid is a subsidiary of Occidental Oil and Gas Holding Corporation, which is a subsidiary of Occidental Petroleum Investment Company. Occidental Petroleum Investment Company is a subsidiary of Occidental Petroleum Corporation. (Record Document 15 at 1).

(Record Document 1-2 at 18). This correspondence was drafted on Oxy's letterhead. On September 10, 2011, plaintiffs' counsel sent a follow up letter to Moore stating it belief that Placid owns the lease and putting Oxy on notice of the royalties issue. Plaintiffs' counsel states that "this letter is Oxy's notice and demand to pay my clients royalty [sic]." (Record Document 1-2 at 20). Moore then responded, in part, to a second demand letter from plaintiffs as follows:

> Placid Oil Company concurs in the belief that it, as opposed to OXY USA, Inc., owns an interest in the captioned lease. Placid has written the two operators of producing wells in units that include your clients' lease acreage....demanding that they recognize Placid's interest, and requesting that they commence payment of royalties to your clients, or to advise why they have not paid your clients.
> As I advised you over the telephone, Placid is unable to pay you royalties because Placid has not produced or sold any oil or gas. As soon as I receive a response...I will apprise you of their response. If they commence payment of royalties to you in the meantime, please let me know.

(Record Document 1-2 at 21). This correspondence was drafted on Placid's letterhead, which affirmatively shows Placid as a subsidiary of Occidental Petroleum Corporation.

## LAW AND ANALYSIS

The Louisiana Mineral Code provides that the Louisiana Civil Code will control in regards to placing a lessee in default, subject to a few modifications. See La. R.S. 31:135. One of those modifications is found in La. R.S. 31:136:

> If a mineral lessor seeks relief from his lessee arising from drainage of the property leased or from any other claim that the lessee has failed to develop and operate the property leased as a prudent operator, he must give his lessee written notice of the asserted breach to perform and allow a reasonable time for performance by the lessee as a prerequisite to a judicial demand for damages or dissolution of the lease. If a lessee is

>found to have had actual or constructive knowledge of drainage and is held responsible for consequent damages, the damages may be computed from the time a reasonably prudent operator would have protected the leased premises from drainage. In other cases where notice is required by this Article damages may be computed only from the time the written notice was received by the lessee.

Further, La. R.S. 31:137 states that "If a mineral lessor seeks relief for the failure of his lessee to make timely or proper payment of royalties, he must give his lessee written notice of such failure as a prerequisite to a judicial demand for damages or dissolution of the lease." Therefore, it is apparent from a plain reading of the Mineral Code that, for all of plaintiffs' claims, notice and reasonable time to cure the alleged breach are required. See Broussard v. Hilcorp Energy Co., 24 So. 3d 813 (La. 2009). "Under Louisiana law, '[t]he purpose of the requirement of putting in default for non-development is (1) to provide the lessee notice that the lessor considers the lessee's actions (or inaction) as violative of the implied obligation to develop the leased premises, and (2) to afford the lessee a reasonable opportunity to perform its development obligations.'" Rathborne Land Co., L.L.C. v. Ascent Energy, Inc., 610 F.3d 249, 255 (5th Cir. 2010) (citations omitted).

In Lucky v. Encana Oil & Gas (USA), Inc., 46 So.3d 731 (La. App. 2d Cir. 2008), the plaintiff entered into various oil, gas, and mineral leases with a company called Fite. Fite then sold an interest in the lease to EnCana, making EnCana Fite's sublessee. The plaintiff sent a letter to EnCana alleging that Fite breached the lease and requested termination of the lease. Subsequently, plaintiff filed suit against Fite and EnCana for breach of the lease. The court held that notice to EnCana, the sublessee, was insufficient. However, the reasoning was based on the language of the lease and not the Mineral Code.[3] "The trial

---

[3]The court made this distinction because, unlike the motion presently before the Court, the plaintiff was asserting that its claims fell outside the scope of the above cited

court characterized the application of the provision as a 'technicality,' given the fact that EnCana subsequently forwarded the letter to Fite. However, contracts have the effect of law for the parties, even if the contractual terms are 'technicalities.'" See id. at 733. In Lucky, the court was not persuaded by the fact that the proper party received actual notice of the demands. The court only focused on the fact that the lease between the parties required notice to a certain party and the plaintiff did not address its demands to that party.

The Louisiana Supreme Court has not weighed in on this particular issue as of yet. Therefore, the Court is left to make an Erie guess. "In the absence of a final decision by the state's highest court on the issue at hand, it is the duty of the federal court to determine, in its best judgment, how the highest court of the state would resolve the issue if presented with the same case." SMI Owen Steel Co., Inc. v. Marsh USA, Inc., 520 F.3d 432, 437 (5th Cir. 2008).

The lease between plaintiffs and Placid states "in the event Lessor considers that operations are not being conducted in compliance with this contract, Lessee shall be notified in writing of the facts relied upon as constituting a breach hereof and Lessee shall have sixty (60) days after receipt of such notice to comply with the obligations imposed by virtue of this instrument." (Record Document 1-2 at 9).

Both the Mineral Code and the parties' lease requires plaintiffs to give the lessee written notice of demands like the ones in this matter. In this instance, written notice was not directed to Placid, but Oxy. It is undisputed that Oxy, or its parent company, Occidental Petroleum Corporation, are not lessees of record to this lease. Under Lucky, Louisiana courts might not be persuaded by the fact that Oxy USA Inc. forwarded the notice to Placid.

---

Louisiana Mineral Code articles.

However, what distinguishes this case from <u>Lucky</u> is that when written notice was given to Brenton Moore, managing counsel for Oxy, it was simultaneously provided to Brenton Moore, managing counsel for Placid. Even though the correspondence was addressed to Oxy, Moore made it clear in his reply correspondence that he was responding on behalf of Oxy and Placid, if for no other reason than the fact he wrote one letter on Oxy letterhead and one on Placid letterhead, while serving as the managing counsel for both. Unlike <u>Lucky</u>, where the "technicality" was giving notice to a sub-lessee as opposed to a lessee, here, the supposed "technicality" was mailing the lessor's demand letter to Oxy's managing counsel instead of Placid's, when, in fact, both companies happen to have the same corporate counsel with the same title.[4]

Placid was placed on notice of plaintiffs' claims. Moore responded to plaintiffs on Placid's letterhead asserting Placid's position on plaintiffs' demands. The only way this notice could be deemed insufficient is if a Louisiana court would focus solely on the fact the letters were addressed to Oxy and not Placid and ignore that Moore, managing counsel of both companies, instructed plaintiffs' counsel to direct *all* correspondence to him. Plaintiffs gave written notice of all the claims at issue to Placid's managing counsel and therefore dismissal is inappropriate.

## CONCLUSION

Plaintiffs sent written notification of the demands made in this matter to Brenton Moore, the managing counsel of Placid Oil Company. Placid Oil Company is the lessee of the lease at issue. Therefore, this written notification satisfies both the Louisiana Mineral

---

[4]Moore may, in fact, wear two different hats as managing counsel for two different subsidiaries of Occidental Petroleum Corporation; however, the Court is convinced that the two hats cover the same head.

Code's requirements of notice as well as the parties' lease requirements of notice.

Accordingly,

**IT IS ORDERED** that Placid's Motion for Leave to File Reply to Sur-Reply Memorandum (Record Document 21) is **GRANTED**.

**IT IS FURTHER ORDERED** that the Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(B)(6) (Record Document 13) is **DENIED**.

**THUS DONE AND SIGNED** at Shreveport, Louisiana, this the 10th day of April, 2012.

_____
S. MAURICE HICKS, JR.
UNITED STATES DISTRICT JUDGE