UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| DELBERT LAFITTE ESTESS, ET AL | CIVIL ACTION NO. 5:12-cv-00052 |
| VERSUS | JUDGE ELIZABETH ERNY FOOTE |
| PLACID OIL COMPANY | MAGISTRATE JUDGE MARK HORNSBY |

### MEMORANDUM RULING

Before the Court are cross-motions for partial summary judgment between the third-party Plaintiff and a third-party Defendant on the issue of the interpretation of the terms of an assignment of oil, gas and mineral leases. [Record Documents 65 and 67]. Also pending before the Court are three Motions To Strike [Record Documents 77, 78, and 79] relating to evidence submitted in support of the main motions. Third-party Plaintiff, Placid Oil Company ("Placid"), believes that it owns a working interest in the "deep rights" in an oil, gas and mineral lease granted by Delbert Lafitte Estess and Barbara Ellen DeBose Estess (collectively "Plaintiffs"), while third-party Defendant E&P Company, L.P. ("EP") argues that it owns 100% of the working interest in the deep rights. Another third-party Defendant, Encana Oil & Gas (USA) Inc. ("Encana"), also claims that Placid owns no working or other interest in the lease. For the reasons stated herein, the Court: 1) **DENIES** Placid's Motion for Partial Summary Judgment [Record Document 65]; 2) **DENIES** EP's Motion for Partial Summary Judgment [Record Document 67]; and 3) **DENIES** Placid's Motions To Strike [Record Documents 77, 78 and 79].

I.  **Factual and Procedural Background**

The Plaintiffs granted an oil, gas and mineral lease (the "Estess Lease") to Placid on August 4, 1972, covering four tracts of land totaling 152.26 acres in Sections 5 and 6, Township 13 North, Range 14 West, and Sections 31 and 32, Township 14 North, Range 14 West.[1] The Estess Lease is on a Bath Form Louisiana Spec. 14-BRI-2A-PX 12-63, provides for a one-eighth royalty, includes a five year primary term, and was recorded under Registry Number 356828 in the Conveyance Records of DeSoto Parish, Louisiana.[2] The parties agree that the sections covered by the Estess Lease that are in dispute are Section 5, Township 13 North, Range 14 West ("Section 5") and Section 32, Township 14 North, Range 14 West ("Section 32").[3] Placid does not make a claim about the deep rights in Section 31, Township 14 North, Range 14 West, and EP makes no claim as to depths below 9,310 feet below the surface in Section 6, Township 13 North, Range 14 West.[4]

By Assignment, Conveyance and Bill of Sale, dated effective June 13, 1983, Placid conveyed 35.71428% of its working interest in the Estess Lease to Placid International Oil, Ltd., which then assigned that interest to Louisiana-Hunt Petroleum Corporation (a 18.90756% working interest) and Rosewood Resources, Inc. (a 16.80672% working

---

[1] Record Document 65, Exhibit A.

[2] Id.; Record Document 65-1, p. 8.

[3] Record Document 65-1, p. 8; Record Document 67-1, p. 8.

[4] Record Document 65-1, p. 8.

interest) by act dated effective June 13, 1983.[5] This Assignment covered Placid's interest in both Sections 5 and 32.[6]

Placid granted a sublease to Hunt Petroleum Corporation ("Hunt"), dated effective February 1, 1991, covering all right, title and interest in the Estess Lease insofar as the lease covered land within the unit established for the HOSS RA SU 33; Haynes Estate #1 Well, and limited to depths between the surface and 10,400 feet below the surface, save and except the borehole and production from the Burford #1 Well (the "Hunt Sublease").[7] Placid reserved an overriding royalty interest equal to 6.25% of 8/8ths of production from the surface to the base of the Hosston Formation, being 9,130 feet measured depth, and an overriding royalty interest equal to the difference between existing lease burdens and 25% with respect to production from the base of the Hosston Formation down to and including a depth of 10,400 feet.[8] The Hunt Sublease conveyed Placid's interest in Section 5 but did not include a conveyance of any interest in Section 32.[9]

By Assignment and Bill of Sale, dated November 10, 1992, effective June 1, 1992, Placid Oil Company entered into a contract with Smith Operating and Management Co. ("Smith Operating"), in which it conveyed interest in various oil, gas and mineral leases, including some portion of interest in Sections 5 and 32 of the Estess Lease (the "Placid-

---

[5] Record Document 65-1, p. 10.

[6] Id.

[7] Id.

[8] Id. at 11.

[9] Record Document 65-1, p. 10.

Smith Assignment").[10] Through various conveyances and assignments, EP became the successor in interest to Smith Operating.[11] The interpretation of the Placid-Smith Assignment and the amount of interest in the Estess Lease that Placid conveyed to Smith Operating is in dispute between the parties.

Plaintiffs, and their successors in interest, filed suit against Placid in state court for failure to pay royalties, and Placid removed the suit to this Court under diversity jurisdiction.[12] Placid issued a Third Party Complaint against EP and Encana, asserting that it owns a 64.28572% working interest in Section 5, covering all depths below 10,400 feet from the surface, excepting the Hosston Formation, and a 64.28572% working interest in Section 32, covering all depths and formations except the Hosston and Cotton Valley Formations.[13] EP, as successor in interest to El Paso E&P Company, L.P., counterclaimed against Placid. EP stated that Placid conveyed all interest in the Estess Lease to Smith Operating in the Placid-Smith Assignment, and as such, EP owns all working and overriding royalty interest in the Estess Lease.[14] Encana also filed an Answer in which it stated that Placid owns no interest in the Estess Lease and that it adopts by reference and in extenso the defense asserted by any other party.[15]

---

[10] Record Document 65-1, p. 11.

[11] Record Document 27, p. 16; Record Document 67-1, p. 5

[12] Record Document 1.

[13] Record Document 27, pp. 22-23.

[14] Record Document 43, p. 12.

[15] Record Document 44, pp 10.

Placid and EP filed cross Motions for Partial Summary Judgment, in which each argues that the Placid-Smith Assignment is unambiguous.[16] Placid argues that the Placid-Smith Assignment is limited to certain depths and strata and that it has retained the deep rights in Sections 5 and 32.[17] EP argues that the Placid-Smith Agreement conveyed all of Placid's interest in the Estess Lease to Smith Operating, and therefore EP now owns all interest in Sections 5 and 32.[18]

## II.   Summary Judgment Standard

Federal Rule of Civil Procedure 56(a) directs that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[19] Summary judgment is appropriate when the pleadings, answers to interrogatories, admissions, depositions and affidavits on file indicate that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law.  See Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548 (1986). When the burden at trial will rest on the non-moving party, the moving party need not produce evidence to negate the elements of the non-moving party's

---

[16] Record Documents 65-1 and 67-1.

[17] Record Document 65-1, p. 2.

[18] Record Document 67-1, p. 2.

[19] Rule 56 was amended effective December 1, 2010. Per the comments, the 2010 amendment was intended "to improve the procedures for presenting and deciding summary judgment motions and to make the procedures more consistent with those already used in many courts. The standard for granting summary judgment remains unchanged." Therefore, the case law applicable to Rule 56 prior to its amendment remains authoritative, and this Court will rely on it accordingly.

case; rather, it need only point out the absence of supporting evidence. See id. at 322-323.

Once the movant carries its initial burden, it is incumbent upon the non-moving party to demonstrate the existence of a genuine dispute as to a material fact. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 106 S. Ct. 1348 (1986); Wallace v. Texas Tech. Univ., 80 F.3d 1042, 1047 (5th Cir. 1996)(citations omitted).  If the motion is properly made, however, Rule 56(c) requires the nonmovant to go "beyond the pleadings and designate specific facts in the record showing that there is a genuine issue for trial." Wallace, 80 F.3d at 1047 (citations omitted).  This burden is not satisfied with some metaphysical doubt as to the material facts, by conclusory or unsubstantiated allegations, or by a mere scintilla of evidence. See Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994)(citations omitted). However, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S. Ct. 2505 (1985)(citations omitted); Reid v. State Farm Mut. Auto Ins. Co., 784 F.2d 577, 578 (5th Cir. 1986)(the court must "review the facts drawing all inferences most favorable to the party opposing the motion").

As this case is before the Court under diversity jurisdiction, the Court must apply the substantive law of the forum state. See Bradley v. Allstate Ins. Co., 620 F.3d 509, 517 n.2 (5th Cir. 2010) (citing Erie R.R. v. Tompkins, 304 U.S. 64 (1938)).  The Fifth Circuit in In re Katrina Canal Breaches Litigation stated the appropriate methodology for a Federal Court sitting in diversity in Louisiana to apply:

> To determine Louisiana law, we look to the final decisions of the Louisiana Supreme Court.  In the absence of a final decision by the Louisiana Supreme Court, we must make an Erie guess and determine, in our best judgment, how that court would resolve the issue if presented with the same case.  In making an Erie guess, we must employ Louisiana's civilian methodology, whereby we first examine primary sources of law: the constitution, codes, and statutes. Jurisprudence, even when it rises to the level of *jurisprudence constante*, is a secondary law source in Louisiana. Thus, although we will not disregard the decisions of Louisiana's intermediate courts unless we are convinced that the Louisiana Supreme Court would decide otherwise, we are not strictly bound by them.

495 F.3d 191, 206 (5th Cir. 2007) (citations and internal marks omitted).

### III.   Law and Analysis

At dispute between the parties is the interpretation of the Placid-Smith Assignment. "Contracts have the effect of law for the parties" and the "[i]nterpretation of a contract is the determination of the common intent of the parties." La. Civ. Code Ann. arts. 1983 and 2045 (2012). "When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent." La. Civ. Code Ann. art. 2046 (2012).  "When the language of a contract is clear and unambiguous, it must be interpreted solely by reference to the four corners of that document." Tammariello Properties, Inc. v. Med. Realty Co., Inc., 549 So.2d 1259, 1263 (La. App. 3 Cir. 1989). "A doubtful provision must be interpreted in light of the nature of the contract, equity, usages, the conduct of the parties before and after the formation of the contract, and other contracts of a like nature between the same parties." La. Civ. Code. art. 2053 (2012).

#### A.   The Placid-Smith Assignment

Both Placid and EP argue that the language of the Placid-Smith Agreement is unambiguous on its face.[20] Placid argues that the Placid-Smith Assignment was intended to be limited to certain depths, and strata and as a result, it maintained ownership over the deep rights under Sections 5 and 32, insofar as they are covered by the Estess Lease.[21] EP argues that the parties to the Placid-Smith Assignment intended to convey all interest in the Estess Lease in the Placid-Smith Assignment, including any interest in the deep rights.[22]

The Placid-Smith Assignment was granted by Placid to Smith Operating, by act dated November 10, 1992 and effective June 1, 1992, covering a large number of oil, gas and mineral leases over various sections, townships and ranges.[23] The Assignment includes an initial granting clause, which states that Placid grants:

> . . . all of Assignor's right, title and interest in, to and under:
> (1) the oil and gas lease(s) described in Exhibit "A" attached hereto and made a part hereof, insofar and only insofar as said lease(s) cover the lands, depths, formations, wellbore rights and/or other rights specified on said Exhibit "A"...[24]

Exhibit "A" to the Placid-Smith Assignment is attached to it and includes conveyances of interest in all of the sections of land covered by the Estess Lease.[25]

---

[20] Record Document 65-1, p. 9;

[21] Record Document 65-1, p. 9.

[22] Record Document 67-1, p. 8.

[23] Record Document 65-17, Exhibit O.

[24] Id.

[25] Record Document 65-17, Exhibit O.

The portion of Exhibit "A" which conveys interest in Section 5 is located on Exhibit "A" page 3, and begins as follows:

> HOSS RA SU 33; Haynes Estate #1 and
> HOSS RA SU33; Burford #1-Alt
> <u>Section 5, Township 13 North, Range 14 West</u>
>
> The following described oil, gas and mineral leases insofar and only insofar as said leases cover lands situated in Section 5, Township 13 North, Range 14 West, DeSoto Parish, Louisiana to wit...[26]

The description then goes on to list various oil, gas and mineral leases, including the Estess Lease. It then states that the leases are subject to a Farmout Agreement dated May 9, 1990 between Placid and Rosewood Resources, Inc. and the Hunt Sublease. Finally, the description states that Placid's interest in the Haynes Estate #1 is a .0401786 net revenue interest and that its interest in the Burford #1-Alt. includes a .6428572 working interest and a .5625001 net revenue interest.[27]

Similarly, the portion of Exhibit "A" that conveys interest in Section 32 is located on Exhibit "A" page 8, and begins with the following description:

> HOSS RA SU20; Cook #2 and
> CV RA SU20; Cook #2-D
> <u>Section 32, Township 14 North, Range 14 West</u>
>
> The following described oil, gas and mineral leases insofar and only insofar as said leases cover lands situated in Section 32, Township 14 North, Range 14 West, DeSoto Parish, Louisiana to wit...[28]

---

[26] <u>Id.</u>

[27] <u>Id.</u>

[28] <u>Id.</u>

The description notes that Placid's interest in the Cook #2 and Cook#2-D include a .6428572 working interest and a .5599890 net revenue interest.[29]

### B. The Parties' Interpretations

Placid argues that the unit/well designations at the beginning of the conveyances of Sections 5 and 32 act as limitations to the initial granting language.[30] Placid states that the "insofar and only insofar" language in the initial granting clause acts to limit the conveyance of interest to what is described on Exhibit "A", and that the unit/well designations that begin the descriptions limit that conveyance to the depths of those wells and unit formations.[31] To support this interpretation of the Placid-Smith Assignment, Placid notes that its conveyance of interest in the Estess Lease insofar as it covers Section 31, Township 14 North, Range 14 East does not use a unit/well designation, and thus, Placid argues that it conveyed all of its interest in that section to Smith Operating.[32] Placid reasons that if its intention was to convey all of its interest in the Estess Lease, including the deep rights, it would have simply listed the lease, as it did in Section 31, Township 14 North, Range 14 West.[33] EP's response to this argument is that at the time of the Placid-Smith Assignment, there had been no wells drilled on Section 31, Township 14 North,

---

[29] Id.

[30] Record Document 65-1, p. 21

[31] Id.

[32] Record Document 65-1, p. 24.

[33] Id.

Range 14 West and that is the reason why there is no unit/well designation for Section 31.[34]

Additionally, Placid notes that some of the sections of land conveyed are listed twice in the Assignment, followed by the same oil, gas and mineral leases, but under different unit/well designations.[35] Placid makes the argument that if its intention was to convey interest in a lease limited only by section, why would some of the sections be separated out by different unit/well designations but with the same oil, gas and mineral leases conveyed?[36]

EP believes that Placid, through the Placid-Smith Assignment, conveyed all of its interest in the Estess Lease and that EP is the owner of 100% of the working interest in Sections 5 and 32.[37] EP argues that the unit/well designations are merely headings intended to provide organization and ease of reference to the assignment.[38] EP points to the language directly below the unit/well designations, which states "the following described oil, gas and mineral leases insofar and only insofar as said leases cover lands situated in . . . ."[39] EP argues that this is the language that limits the initial granting clause

---

[34] Record Document 80, p. 10.

[35] Record Document 65-1, p. 23. For example, Section 8, found on Exhibit A, pp. 2-3 and Section 33, found on Exhibit A, pp. 11-13.

[36] Id.

[37] Record Document 67-1, p. 9.

[38] Id.

[39] Id. at p. 10.

because it limits the conveyance to a specific **section** covered by the various leases.[40] EP argues that this language, and not that of the unit/well designation, was the language the parties' intended to use to limit the conveyance.

To support its interpretation of the Placid-Smith Assignment, EP focuses on the description of Section 33, Township 14 North, Range 14 North, contained in the Placid-Smith Assignment, which states that:

> the following described oil, gas and mineral leases insofar and only insofar as said leases cover lands situated in Section 33, Township 14 North, Range 14 West, DeSoto Parish, Louisiana, and then only as to those depths above 9,200 feet below the surface of the earth...[41]

EP argues that if it was Placid's intent to limit the depths of its assignment in Sections 5 and 32, it would have done so by specifically limiting the conveyance to a depth as it did in Section 33.[42]

EP also argues that Placid's interpretation of the assignment is flawed because under that interpretation, Placid did not own the interest it purports to have conveyed to Smith Operating because that interest was previously conveyed to Hunt in the Hunt Sublease.[43] Placid's response to this argument is that as a result of the Hunt Sublease, it

---

[40]Record Document 67-1, p. 10.

[41]Id. at p. 11.

[42]Id. at p. 12.

[43]Record Document 67-1, p. 17.

owned an overriding royalty interest, and this overriding royalty interest is what was conveyed to Smith Operating in the Placid-Smith Assignment.[44]

Finally, EP also notes that Smith Operating and EP developed their interests in Sections 5 and 32 for nearly twenty years without paying Placid any proceeds attributable to mineral interests and that during that time Placid never contributed to the costs of exploration.[45] Placid responds that it would not have had a reason to develop the deep rights in Sections 5 and 32 until the discovery of the Haynesville Shale, which occurred in 2008.[46] Placid also notes that its claims to the deep rights are not prescribed and as the owner of those deep rights, it had the right to assert them at any time.[47]

### C.   The Placid-Smith Assignment is Ambiguous

It is the responsibility of this Court, when faced with a dispute about a contract interpretation, to determine the intent of the parties. See La Civ. Code Ann. art. 2045 (2012). "A contract is considered ambiguous on the issue of intent when it lacks a provision bearing on that issue or when the language used in the contract is uncertain or is fairly susceptible to more than one interpretation." Blanchard, 755 So.2d at 381 (citing Noel v. Discus Oil Corp., 714 So. 2d 105, 107 (La. App. 2 Cir. 1998)). Based on its analysis of the Placid-Smith Assignment itself and the parties' interpretations of the assignment, the

---

[44] Record Document 75, p. 16.

[45] Id. at 17.

[46] Record Document 75, p. 14.

[47] Id.

Court finds that both Placid and EP have presented the Court with reasonable interpretations of the Placid-Smith Assignment.

Both parties have successfully highlighted various clauses and phrases within the Placid-Smith Assignment that support their respective interpretations of the contract. Likewise, each party has plausibly rebutted the other party's reasoning for their interpretation of the contract. The parties disagree about the significance of their actions regarding their rights and obligations under the contract subsequent to its execution. Accordingly, the Court finds that the Placid-Smith Assignment is susceptible to more than one interpretation and is ambiguous.

### D.     Extrinsic Evidence

While parole evidence is generally inadmissible in the determination of parties' intent, when the terms of a contract are ambiguous, the court may look beyond the four corners of the document. See Alyce Gaines Johnson Special Trust v. El Paso E&P Co., L.P., 773 F. Supp. 2d 640, 644 (W.D. La. 2011). "Parol or extrinsic evidence is generally inadmissible to vary the terms of a written contract unless there is ambiguity in the written expression of the parties' common intent." Blanchard, 755 So.2d at 381.

Although it argues that the Placid-Smith Assignment is unambiguous, EP has submitted extrinsic evidence in support of its interpretation of the Placid-Smith Assignment, including various affidavits, letters, letter agreements and portions of an earlier concursus proceeding involving the Placid-Smith Assignment. Placid has objected to almost all of this extrinsic evidence and has filed three Motions To Strike [Record Documents 77, 78, and

79]. After a careful review of the Motions To Strike and EP's subsequent Memorandums in Opposition,[48] the Court finds that there is sufficient conflict regarding the substance and interpretation of the evidence as to create genuine issues of material fact. Although the Court is denying Placid's Motions To Strike, it will take Placid's objections into consideration when weighing EP's proffered evidence.

In sum, the Court finds that both Placid and EP have provided reasonable interpretations of the language of the Placid-Smith Assignment and thus, the Court finds Placid-Smith Assignment to be ambiguous. Placid and EP dispute the significance of various facts and circumstances surrounding the negotiations and execution of the Placid-Smith Assignment, including how the parties treated their rights and obligations subsequent to the contract's execution. The parties also dispute the importance and interpretation of much of the extrinsic evidence in the record, including various affidavits, letters, and the proceedings of an earlier concursus proceeding involving the Placid-Smith Assignment.

## IV. Conclusion

For the foregoing reasons,

**IT IS ORDERED** that Placid's Motion for Partial Summary Judgment [Record Document 65] be and is hereby **DENIED**;

**IT IS FURTHER ORDERED** that EP's Motion for Summary Judgment [Record Document 67] be and is hereby **DENIED**; and

---

[48]Record Documents 88, 89, and 90.

**IT IS FURTHER ORDERED** that Placid's Motions To Strike [Record Documents 77, 78 & 79] be and are hereby **DENIED**.

Counsel are directed to contact Judge Hornsby's office to set up a scheduling conference in this matter.

**THUS DONE AND SIGNED** this 28th day of March, 2014.

_____
ELIZABETH ERNY FOOTE
UNITED STATES DISTRICT JUDGE