UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION


DELBERT LAFITTE ESTESS              CIVIL ACTION NO. 12-cv-0052

VERSUS

PLACID OIL CO.                      MAGISTRATE JUDGE HORNSBY


**MEMORANDUM RULING**

**Introduction**

Before the court is the issue of ownership of certain "deep rights" under a mineral lease and a related assignment. Judge Foote held in a prior ruling that the assignment is ambiguous regarding the extent of the interests it conveyed.[1]  The interested parties nonetheless eschewed parol evidence and submitted the issue for trial on a stipulated record that includes nothing but the applicable documents.  The undersigned has reviewed the competing arguments and determined that the deep rights at issue were conveyed by the assignment.

**Background Facts and Prior Proceedings**

Delbert and Barbara Estess owned property in DeSoto Parish.  They executed a mineral lease in 1972 that granted Placid Oil Company the right to produce oil and gas from the property in exchange for a 1/8 royalty paid to the Estesses.  The lease covered four tracts

---

[1]  The parties later filed written consent to have the case decided by a magistrate judge, and Judge Foote referred the case to the undersigned pursuant to 28 U.S.C. § 636(c).

of land comprising 152.26 acres located within four different sections, which the parties refer to as Sections 5, 6, 31 and 32.

This civil action began when the Estesses, together with relatives and companies that came to share their interest in the lease, filed suit against Placid and alleged that Placid had not paid royalties on production from a unit that included a portion of Section 32 and had not prudently developed the property by attempting to produce from the deeper Haynesville Shale formation that had experienced a boom in recent years.

Placid filed an answer and asserted that it owned no working interest in the Estess lease with respect to Section 31; that interest was assigned to a third party in 1992. Placid added that it had been informed by EP Energy E&P Company, L.P. ("EPE")[2] and Encana Oil & Gas (USA), Inc. ("Encana") that it is their respective positions that, by virtue of various assignments, Placid no longer has any interest in the Estess lease and that EPE owns the entire working interest. Placid contends, however, that it owns a 64.28572 % working interest in the "deep rights" in the other three sections. Placid filed a third-party complaint against EPE and Encana and asserted Placid's claims to those deep rights and related revenues. EPE responded with a counterclaim against Placid and sought a declaration that it owns the entirety of the Estess lease with regard to Sections 5, 6, and 32.

---

[2] EPE is successor in interest to El Paso E&P Company, LP. The El Paso name appears on several of the relevant documents and early pleadings, but the court will refer to it as EPE.

The dispute with regard to the rights in Section 5 and Section 32 is based on competing interpretations of a 1992 assignment from Placid to Smith Operating and Management Co. (the "Placid-Smith Assignment"). EPE is the successor in interest to Smith. Placid and EPE filed cross-motions for partial summary judgment on the issue of the interpretation of the assignment. Judge Foote held that the assignment is ambiguous. She also found that there were genuine disputes regarding the significance and interpretation of parol evidence that could assist in interpreting the assignment, and she denied the motions. Doc. 110.

The parties then attempted to resolve the case, were unsuccessful, and consented to trial before the undersigned. Docs. 112-14. The parties agreed that resolution of the "deep rights" issue was the key to resolving the lawsuit and that the issue could be resolved on stipulated facts and briefs. Doc. 117. The parties filed a Joint Stipulation of Facts (Doc. 126) aimed at resolution of the deep rights issue with respect to Sections 5 and 32.[3]

Placid's memorandum filed in connection with the Stipulated Record argued that the Placid-Smith Assignment is unambiguous and reads in its favor. EPE's memorandum argued that the assignment is unambiguous in its favor, but EPE also referred to affidavits and other evidence filed in connection with the earlier motion practice. Placid objected to the court considering the extrinsic evidence referenced by EPE or any other evidence outside the

---

[3] The deep rights in Section 6 are governed by another line of conveyances; Placid filed a motion for partial summary judgment to address those rights, and it has been granted. Docs. 145 and 151. Placid makes no claim to rights in Section 31.

stipulated facts.  Those stipulations include only basic information about the lease and copies of the relevant language in the Placid-Smith Assignment.  EPE responded that it agrees that the Placid-Smith Assignment is unambiguous and the deep rights issue may be decided on the stipulated facts and briefs.  It explained that it made reference to extrinsic evidence to preserve earlier arguments and evidence in the event it is "later somehow found that the Placid-Smith Assignment is ambiguous ... ."  EPE stated that it does not ask the court to look beyond the facts in the joint stipulation.

Thus, the parties insist that the Placid-Smith Assignment is unambiguous, but Judge Foote earlier held that it is ambiguous, which would allow the consideration of parol evidence to determine the intent of the parties.[4]  The undersigned issued an order (Doc. 144) and stated that the parties, by submitting the matter on a stipulated record that includes only the assignment language, were asking the court to interpret the meaning of the ambiguous assignment without the benefit of any parol evidence.  The court stated that it was willing to do so, but it wished to make clear that submission on the stipulated record is for a final decision on the issue.  There would not be a later opportunity at which EPE or any other party could decide to marshal parol evidence that it reserved its rights on.

---

[4] If a contract is ambiguous, the court may resort to parol evidence to interpret the contract. Doyal v. Pickett, 628 So.2d 184, 187 (La. App. 2d Cir. 1993). "Any doubtful provisions must be interpreted in light of the nature of the contract, equity, usages, the conduct of the parties before and after the formation of the contract, and other contracts of a like nature between the same parties." Id.

A status conference was held to discuss the issues raised in the order.  The parties confirmed their agreement that the matter has been submitted on the stipulated record for a final decision on the Placid-Smith Assignment and no additional evidence is necessary or offered in connection with the interpretation of the assignment.  The parties also stated their intent to ask the undersigned to certify the court's ruling on the issue for an immediate appeal pursuant to 28 U.S.C. § 1292(b). Doc. 150.

**Stipulated Facts**

The stipulated facts on which the court must base its decision are as follows.  Delbert and Barbara Estess owned property in DeSoto Parish.  They executed a mineral lease in 1972 (the "Estess Lease")  that granted Placid Oil Company the right to produce oil and gas from the property in exchange for a 1/8 royalty payable to the Estesses.  The Estess Lease covered four tracts of land comprising 152.26 acres located within four different sections, which the parties refer to as Sections 5, 6, 31 and 32.  After the execution of the Estess Lease, various assignments reduced Placid's working interest in the Estess Lease to 64.28572%.

Placid granted a sublease to Hunt Petroleum Corporation in 1991 that conveyed an interest in Section 5 but not Section 32.  The Hunt Sublease states that Placid subleases and conveys, subject to reservations in the instrument, Placid's interests in and to certain mineral leases set forth on Exhibit A.  The sublease contains a statement after the conveying language: "All of Sublessor's right, title and interest in said leases INSOFAR AND ONLY INSOFAR as said leases cover land within the drilling or proration unit established for the HOSS SU 33; Haynes Estate #1 Well located in Township 13 North-Range 14 West, Section

5, Desoto Parish, Louisiana." Paragraph No. 8 of the sublease provides: "This Sublease shall cover and include only those subsurface formations in the drilling unit found between the surface of the earth and a depth of 10,400 feet below the surface of the earth save and except the borehole and production from the Burford #1 Well."

Placid, in the Hunt Sublease, also reserved two overriding royalties.  Both are described in very specific terms as to which depths they affect and the percentages reserved.  One is "6.25% of 8/8 from the surface to the Base of the Hosston formation being 9,130 feet measured depth," as shown in a log for Haynes Estate #1 Well.  The other is equal to the difference between existing lease burdens and 25% of the production from the lease from "the Base of the Hosston formation, as hereinabove defined, down to and including a depth of 10,400 feet [with an option at payout to convert to an undivided 25% working interest]."

By Assignment and Bill of Sale dated June 1, 1992, Placid assigned to Smith Operating and Management Co. rights in the Estess Lease to the extent the Estess Lease covers Section 5 and Section 32.  This assignment is known as the Placid-Smith Assignment. Through various assignments, EPE is successor in interest to all of Smith Operating's interest in the Estess Lease in Sections 5 and 32, as acquired via the Placid-Smith Assignment. Placid contends that the Placid-Smith Assignment conveyed only limited rights in the Sections 5 and 32 so that it still owns the deep rights in those sections.   EPE argues that the assignment was broader and conveyed all such rights to it.

The Placid-Smith Assignment states that Placid (Assignor) assigns to Smith (succeeded by EPE):

"all of Assignor's right, title and interest in, to and under: (1) the oil and gas lease(s) described in Exhibit "A" attached hereto and made a part hereof, insofar and only insofar as said lease(s) cover the lands, depths, formations, wellbore rights and/or other rights specified on said Exhibit "A"; (2) the well(s) referenced in said leases or other documents described in said Exhibit "A", and the production therefrom; and (3) all fixtures, equipment and other personal property located in, on and/or appurtenant to said wells, or used in connection therewith; and (4) all contracts (including contracts for the sale of production), operating agreements, unitization agreements, licenses, easements, rights of way, options and other agreements which relate or pertain to the interest(s) hereby assigned and transferred (whether or not specifically described herein), but only insofar as same relate or pertain to the interests(s) hereby assigned and transferred."

Exhibit A to the Placid-Smith Assignment is 27 pages long. It begins with a statement that all of the units described in it are situated in the Holly Field in DeSoto Parish, and were created by and are subject to one or more of several orders of the Louisiana Office of Conservation. It then identifies and summarizes ten such orders.

Page two of Exhibit A begins to describe what is being conveyed. It begins: "All of PLACID OIL COMPANY's right, title and interest in and to the following:" It then sets forth several lists of leases over the next 20-plus pages.

Most of the lists begin with a heading of sorts that identifies one or two wells and sets for the section identification information specified and underlined. Below that information begins a new paragraph that reads, typically, "The following described oil, gas and mineral leases insofar and only insofar as said leases cover lands situated in Section __, Township __ North, Range __ West, DeSoto Parish, Louisiana to wit:" What follows is a numbered list and detailed description of several leases, plus any subleases or other agreements they may

be subject to.  The lists typically end with a notation of the percentage of Placid's working

interest, net revenue interest, or both in the well or wells that were identified in the heading.

The portion of Exhibit A that conveys Placid's interest in Section 5 is located on page

3, and begins as follows:

> HOSS RA SU 33; Haynes Estate #1 and
> HOSS RA SU33; Burford #1-Alt
> Section 5, Township 13 North, Range 14 West
>
> The following described oil, gas and mineral leases insofar and only insofar
> as said leases cover lands situated in Section 5, Township 13 North, Range 14
> West, DeSoto Parish, Louisiana to wit...

It then lists eight mineral leases granted to Placid, including the Estess Lease. It states that

the leases are subject to a Farmout Agreement dated May 9, 1990 between Placid and

Rosewood Resources, Inc. and the Hunt Sublease.  Finally, the description states that

Placid's interest in the Haynes Estate #1 is a .0401786 net revenue interest and that its

interest in the Burford #1-Alt. includes a .6428572 working interest and a .5625001 net

revenue interest.

The portion of Exhibit A that conveys Placid's interest in Section 32 is located on

page 8, and begins as follows:

> HOSS RA SU20; Cook #2 and
> CV RA SU20; Cook #2-D
> Section 32, Township 14 North, Range 14 West
>
> The following described oil, gas and mineral leases insofar and only insofar
> as said leases cover lands situated in Section 32, Township 14 North, Range
> 14 West, DeSoto Parish, Louisiana to wit...

It then lists 18 mineral leases granted to Placid, including the Estess Lease.  The description states that Placid's interest in the Cook #2 and Cook#2-D include a .6428572 working interest and a .5599890 net revenue interest.

**The Competing Arguments**

The parties have made numerous points about the language in the Placid-Smith Assignment and Exhibit A, and they have offered several arguments as to how those points support their interpretation of the assignment.  The court will not describe and respond to each of the several arguments made over the course of the scores of pages of briefs, but a summary of some of the principal arguments is set forth below.

The assignment begins by saying that Placid assigns all of its "right, title and interest in, to and under: (1) the oil and gas lease(s) described in Exhibit "A" ..., insofar and only insofar as said lease(s) cover the lands, depths, formations, wellbore rights and/or other rights specified on said Exhibit "A"; (2) the well(s) referenced in said leases or other documents described in said Exhibit "A", and the production therefrom; and (3) all fixtures, equipment and other personal property located in, on and/or appurtenant to said wells, or used in connection therewith; and (4) all contracts ..."   Placid argues that the "insofar and only insofar" language in the initial granting clause limits the conveyance of interests to what is described on Exhibit A, and the unit/well designations that begin the descriptions on Exhibit A limit the assignments of interests in the listed leases to the lands, depths, formations and wellbores specified in those unit/well designations.  The formations and wells described in

the "headings" on Exhibit A did not extend to any deep rights areas, so Placid argues that none were assigned.

Placid notes that its conveyance of the Estess Lease with respect to Section 31 does not use a unit/well designation and, thus, Placid states that it conveyed all of its interest in that section to Smith Operating.  The Section 31 interest is listed on page 21 of Exhibit A under the heading "Other Interests" and describes the Estess Lease insofar and only insofar as the lease includes acreage in Section 31.  Placid reasons that if its intention was to convey all of its interest in the Estess Lease (including the deep rights) with respect to the other Sections, it would have simply listed the lease as it did with respect to Section 31.  EPE responds that no wells had been drilled on Section 31 at the time of the Placid-Smith Assignment, so there was no basis for including a unit/well designation for Section 31.

Placid notes that some of the sections of land conveyed are listed twice in the Assignment, followed by the same oil, gas and mineral leases, but under different unit/well designations. Placid makes the argument that if its intention was to convey interest in a lease limited only by section, why would some of the sections be separated out by different unit/well designations but with the same oil, gas and mineral leases conveyed?

EPE believes that Placid, through the Placid-Smith Assignment, conveyed all of its interest in the Estess Lease so that EPE is now the owner of all of Placid's former interests in Sections 5 and 32. EPE argues that the unit/well designations are merely headings or organizational tools intended to provide ease of reference for persons who view the assignment.  EPE points to the language directly below the unit/well designations, which

states "the following described oil, gas and mineral leases insofar and only insofar as said leases cover lands situated in [a certain section]...."  EPE argues that this is the key language that pairs with the initial granting clause, and it makes the conveyance one all mineral rights (not just rights in a particular wellbore) in a specific section covered by the various listed leases. EPE argues that this language, and not that of the unit/well designation, was the language the parties' intended to describe what was being conveyed.

EPE notes the description of Section 33 on page 11 of Exhibit A.  It designates a unit and well in Section 33 and then states:

> The following described oil, gas and mineral leases insofar and only insofar as said leases cover lands situated in Section 33, Township 14 North, Range 14 West, DeSoto Parish, Louisiana, and then **only as to those depths above 9,200 feet below the surface of the earth**... (Emphasis added.)

EPE argues that if it was Placid's intent to limit the depths of its assignment in Sections 5 and 32, it would have done so by specifically limiting the conveyance to a depth as it did in Section 33. Placid also demonstrated in the Hunt Assignment the use of very specific language when the interest assigned was limited by depth or wellbore.

**The Court's Interpretation**

Like contracts in general, a mineral lease is the law between the parties and regulates their respective rights and obligations.  Ross v. Enervest Operating, L.L.C., 119 So. 3d 943, 953 (La. App. 2nd Cir. 2013).  The general rules of contract interpretation apply. Id.  When

the words of a contract are clear, explicit and lead to no absurd consequences, then no further interpretation may be made in search of the parties' intent. La. C.C. art. 2046. When the words of a contract are susceptible of different meanings, they must be interpreted as having the meaning that best conforms to the object of the contract.  La. C.C. art. 2048.

Judge Foote held that the Placid-Smith Assignment is ambiguous, as it is susceptible of different meanings, and the undersigned agrees.  The parties have asked the court to decide the meaning of the assignment without the benefit of parol evidence that might clarify the ambiguity, so the undersigned is left to interpret the language in a way that is most consistent with what the court believes was the common intent of the parties. La. C.C. art. 2045.

The court finds that EPE's interpretation of the Placid-Smith Assignment is most consistent with the overall document and the reasonable expectations of the parties and third persons who might look to the assignment to determine its scope.  Placid is correct that the assignment begins by stating that Placid assigns all of its interest in and to the leases described in Exhibit A "insofar and only insofar as said leases" cover the lands, depths, formations, wellbore rights and other rights specified on Exhibit A.  Exhibit A refers to specific wells that are associated with various leases, but the court does not read Exhibit A to limit what is being assigned to the interest in those wells and related formations.  Placid's contrary interpretation is one view, but the court finds that the more reasonable view is that the reference to the wells and formations was more of an organizational device to assist persons who were reviewing title or otherwise attempting to assess ownership interests in the relevant areas.

It has been the court's experience that broad assignments of interest in mineral leases are fairly common.  Assignments of particular wellbores or the like are less common.  When parties do wish to limit the interest assigned to a certain depth, wellbore, or the like, they tend to use *very* specific language such as Placid used in the Hunt Sublease.  There is no similar specificity in Exhibit A that would support Placid's argument with respect to this dispute.  Exhibit A does reference well interests, but the court finds that it is because of ease of reference and because the wells are part and parcel of the broader grant of lease rights that are being assigned.

There is an express depth limitation on lease interests in Section 33, which gives meaning to the reference to depths in the granting clause in the main body of the assignment.  If Placid had intended to impose similar depth limitations or wellbore limitations with respect to the other leases or Sections described, it should have done so with greater clarity and specificity than is demonstrated by this instrument.

For these reasons, the court finds that EPE's interpretation of the Placid-Smith Assignment is more consistent with the reasonable expectations and intent of the parties.  Considering the importance of the interests at stake and the need for precision in legal documents affecting those interests, the parties are directed to confer and submit a proposed order that reflects this ruling.  Any interested party or parties may also move for certification of the issue pursuant to 28 U.S.C. § 1292(b).

THUS DONE AND SIGNED in Shreveport, Louisiana, this 26th day of July, 2016.

Mark L. Hornsby
U.S. Magistrate Judge